UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JAMES E. DAVIS, | ) | CASE NO. 4:10 CV 2592 |
| Petitioner, | ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) ) | |
| J.T. SHARTLE, et al., | ) ) | MEMORANDUM OF OPINION AND ORDER |
| Respondents. | ) | |

Before the court is pro se petitioner James E. Davis's above-captioned Petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. Mr. Davis, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton), brings this action against F.C.I. Elkton Warden J.T. Shartle, Case Manager Sweeney, Mr. Yemma, Lt. Gardner, Lt. Brinker, C.O. Pelsnik, Lt. Shuman, Lt. Montgomery and Unit Manager Burns. He claims he lost Good Conduct Time (GCT) and was denied placement in a residential recovery center for 180 days in retaliation for filing a civil complaint against Respondents.

*Background*

Mr. Davis pleaded guilty to violating a federal crime in the United States District

Court for the District of Virginia. See United States v. Davis, No. 3:06-CR-0445 (E.D. Va.). The court sentenced him on July 6, 2007 to serve 63 months in prison. The Bureau of Prisons website reveals he is scheduled for release on May 12, 2011. http://www.bop.gov/iloc2/InmateFinderServlet

The Petition sets forth four grounds for relief, but does not contain a narrative of relevant facts. Mr. Davis states Case Manager Sweeney, Mr. Yemma, Lt. Gardner, Lt. Brinker, C.O. Pelsnik, and Lt. Shuman wrote false incident reports against him. He claims the reports, which are not attached to the Petition, were written in retaliation for filing a civil rights complaint in this court against the warden and staff. See Davis v. Shartle, et al., No. 4:09-cv-02321 (N.D. Ohio filed Oct. 7, 2009). In addition, he claims the Disciplinary Hearing Officer (DHO) denied him a fair hearing. Lt. Montgomery allegedly permitted prison staff to accept false reports about Petitioner. The Lieutenant also allegedly forfeited GCT from Mr. Davis on three separate occasions.

Petitioner alleges Mr. Sweeney retaliated against him by not recommending his placement in a half way house for 180 days. He claims Respondent's actions were also motivated by Petitioner's African American race.

It appears Mr. Davis initiated the administrative review process when he filed a Request for Administrative Remedy, dated September 14, 2009. He complained Mr. Sweeney made a discriminatory remark to him in August 2009 in violation of Policy Program Statement 551.90. Petitioner requested an apology and a new case manager. The request was denied. In a Regional Appeal dated April 15, 2010, Mr. Davis again complains about Mr. Sweeney's racial bias and the denial of his placement in a half-way house for 180 days in violation of the Second Chance Act. As a remedy, he requested 180 days placement in a half-way house and a new case manager.

A review of Petitioner's attachments reveal he appealed three Incident Reports. The

2

first appeal was received by the Central Office on July 19, 2010 and challenged the DHO's decision regarding Incident Report No. 2000516. On August 30, 201, the Central Office Administrative Remedy Coordinator requested an extension of time until September 17, 2010. (Pet.'s Ex. 1C.) The second appeal he filed was also received on July 19, 2010, but appealed Incident Report No. 2005346. Again, the Coordinator requested an extension until September 17, 2010 to respond. (Pet.'s Ex. 1B.) A third appeal, to Incident Report No. 1962762, was received on September 3, 2010 and a response was due by October 13, 2010. (Pet.'s Ex. 1.)

Mr. Davis also includes a Central Office Administrative Appeal he filed, dated September 27, 2010, which refers to "BP 10, 9 and 8 ½". (Pet.'s Ex. 2A, at 1.) These BP "forms" are actually blank sheets of paper on which Petitioner hand wrote his claims because he was allegedly denied copies of these forms. The appeal questions whether: (1) the Second Chance Act voided 18 U.S.C. § 3621(c)(1), (2) he violated Rules A-J under P.S. 7310.04, (3) he was sanctioned because he is an African American Muslim, (4) it was double jeopardy to be sanctioned twice for the same incident, (5) Mr. Sweeney, Warden Shartle or Ms. Burns were retaliating against him for filing a civil suit; and, finally, (6) the North Regional Director is "in violation" by allowing Mr. Sweeney, Ms. Burns and Warden Shartle to allegedly violate 42 U.S.C.§ 17501, BOP P.S. 7310.04 pp 10-11, 18 U.S.C. § 3623(c)(1)(2), Employee Rules 3420.09 and his Fifth Amendment rights.

On the sheet he captions "BP11," Mr. Davis states his appeal of two DHO's decision are in the General Counsel's office, but he had yet to receive a response as of the September 17, 2010 deadline. Id. Mr. Davis perceives the denial of 180 days placement in a half-way house as punishment. Moreover, he challenges being sanctioned twice when he has asserted so many Constitutional and policy violations. He requests monetary compensation for Respondents' alleged

3

violations of his First and Fifth Amendment rights, or in the alternative, 180 days placement in a half way house, effective October 2010.

*Initial Review*

This matter is before the court for initial screening. 28 U.S.C. § 2243; Harper v. Thoms, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and liberally construed in petitioner's favor. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir.2001). As Mr. Davis is appearing pro se, his petition is held to less stringent standards than those drafted by attorneys. Burton v. Jones, 321 F.3d 569, 573 (6th Cir.2003); Hahn v. Star Bank, 190 F.3d 708, 715 (6th Cir.1999). For the reasons set forth below, however, the petition lacks merit and is denied.

*Exhaustion*

"[F]ederal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted." *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir.1981). The BOP maintains an Administrative Remedy Program through which inmates may seek formal review of issues relating to any aspect of their confinement. *See* 28 C.F.R. § 542.10(a). Petitioner's own actions in filing an inmate request and grievance demonstrate that administrative remedies were available to him. Where, as here, exhaustion of administrative remedies is not jurisdictional, this Court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990). Upon review of the substance of Mr. Davis's issue before this Court, judicial economy dictates reaching the merits, which are "easily resolvable against [the] petitioner." See Lambrix v. Singletary, 520 U.S. 518, 117

4

S.Ct. 1517, 1523(1997)(Court would decide case on Teague grounds, rather than prolong litigation by remanding for consideration of procedural issues); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir.1998) ("The simplest way to decide a case is often the best.")

## 28 U.S.C. §2241

Mr. Davis's claim that he has a constitutional right to 180 days placement in a half way house lacks merit. See, e.g., Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). The Supreme Court has clarified the extent to which a prisoner may exercise his right to due process, as follows:

> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.... The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Twenty years later, the Court further clarified that limitations to which liberty interests are conferred as a result of government action. In those cases, a liberty interest is

> generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

5

Sandin v. Conner, 515 U.S. 742, 484 (1996); see Tunnicliffe v. Bureau of Prisons, No. 06-CV-49-HRW, 2006 WL 1360802 (E.D.Ky. May 15, 2006) (denying habeas and injunctive relief, holding that there is no protected liberty interest in C.C.C. placement).

While Mr. Davis claims the Respondents are acting in violation of the Second Chance Act, his reading ignores the scope of the BOP's discretion. With regard to the manner in which the BOP manages prison life:

> (a) A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons. [...]
>
> (b) The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability.

18 U.S.C. § 3621(a) & (b). Congress clearly granted the BOP broad discretion to determine where prisoners will serve their terms of imprisonment. Subsection 3621(a) directs that people who must serve terms of imprisonment be given over to the custody of the BOP. The first sentence of subsection 3621(b) uses mandatory language that the BOP make placement arrangement for all prisoners in its custody. The second sentence of the subsection authorizes the BOP to place prisoners in "any available penal or correctional facility." Thus, the statute commits federal prisoners to the custody of the BOP, directs the Bureau do something to place people so committed, and grants the BOP authority to select the prisoner's place of imprisonment.

Nothing in the statute limits the Bureau's authority to place prisoners, except that the facility chosen must (1) be a "penal or correctional facility"; and, (2) meet "minimum standards of health and habitability established by the Bureau." Hence, the only apparent limitation on the Bureau is that it choose a place that is a "penal or correctional facility."

6

Petitioner suggests that within that discretion, he is entitled to consideration under the Second Chance Act, which states, in part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1)(emphasis added). There is no allegation the BOP failed to provide Mr. Davis the consideration necessary to determine his eligibility for placement in a community correctional facility (C.C.C.) The Act requires that C.C.C. placement decisions be made on an individual basis with reference to the five-factor criteria set out in 18 U.S.C. § 3621(b), as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>    (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Therefore, before a prisoner is even considered eligible for placement in a halfway house or C.C.C. the BOP must consider the factors set forth in 18 U.S.C. § 3621(b).

7

While Mr. Davis may believe he was wrongfully denied the privileges of the Act, his remedy is not an immediate transfer; rather, his remedy is a proper exercise of discretion by respondent. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 251 (3d Cir.2005). As noted above, Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a C.C.C. earlier than the date on which the BOP assigns him--as long it has considered the factors set forth in § 3621(b) as required by the Second Chance Act of 2007.

The remainder of Petitioner's claims are conclusory. There is no statement or reference in the Petition that sets forth this court's jurisdiction over the matter. Without providing a copy of the Incident Report, or upon what evidence the DHO found Petitioner in violation of prison code, Petitioner simply concludes all the charges against him were false. The scope of this Court's review of a DHO's decision is limited to whether some evidence existed to find the prisoner committed the act as charged. Superintendent v. Hill, 472 U.S. 445, 455 (1985)(federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision). Principles requiring generous construction of pro se pleadings are not without limits. Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Id. at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278.

Further, legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken,

8

829 F.2d 10, 12 (6th Cir. 1987).

## Conclusion

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243. Further, Petitioner's Motion to Proceed In Forma Pauperis is granted. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

*Donald C. Nugent 4/19/11*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE